# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHEASTERN DIVISION

MELANIE HENRY,             )
     Plaintiff,          )
                          )
vs.                         )  Case No. 1:05CV00075 ERW
                          )
PEMISCOT MEMORIAL HEALTH  )
SYSTEMS, COUNTY OF PEMISCOT and  )
DR. JOHN NWORA,          )
     Defendants.        )

## MEMORANDUM AND ORDER

This matter is before the Court upon Defendant Pemiscot Memorial Health Systems' Motion for Summary Judgment [doc. #27] and Defendant County of Pemiscot's Motion for Summary Judgment [doc. #25].

## I.  BACKGROUND FACTS

Plaintiff, Melanie A. Henry ("Plaintiff") commenced employment at Defendant Pemiscot Memorial Health Systems[1] ("Defendant PMHS") in April 1993.  Plaintiff currently works as a nurse in Defendant PMHS' Emergency Room Department.[2]  Defendant Dr. John Nwora ("Dr.

---

[1]Pemiscot Memorial Health Systems is owned by the County of Pemiscot, State of Missouri.  The parties dispute, however, whether Pemiscot County operates Defendant PMHS. The parties do not dispute that Defendant PMHS is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e(b).

[2]Plaintiff worked as a nurse in Defendant PMHS' Emergency Room Department from an unspecified date in 2002 to March 2004.  She took a medical leave of absence from March 2004 to June 2004, allegedly as a result of Dr. Nwora's sexually harassing conduct towards her. Plaintiff resumed her employment, as a nurse, with Defendant PMHS in June 2004.

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Nwora") was employed by Defendant PMHS, as both an emergency room physician and Medical Director of the Primary Care Clinic, from July 1994 to February 2005.

The parties dispute whether Dr. Nwora was Plaintiff's supervisor. Plaintiff asserts that Dr. Nwora was her supervisor because he had the ability to direct and supervise Plaintiff's work activities in Defendant PMHS' emergency room department. In addition, Plaintiff contends that, while he was on duty, Dr. Nwora had the authority to prohibit Plaintiff from working in the emergency room. Defendant PMHS, on the other hand, asserts that Dr. Nwora was not Plaintiff's supervisor because he did not have the authority to set Plaintiff's work schedule nor to make decisions regarding Plaintiff's salary or employment status within the nursing department. Defendant PMHS further contends that Dr. Nwora had only the limited authority to direct employees' activities in the emergency room with respect to patient care.

Plaintiff asserts that over a nine month period, while she worked in Defendant's emergency room department, Dr. Nwora subjected Plaintiff to offensive and unwelcome physical touching. In March 2003, Plaintiff claims that Dr. Nwora touched her on the buttocks in the presence of a patient.[3] Plaintiff states that she was questioned about the incident by Gwendolyn Farr ("Ms. Farr"), the Director of Nursing. Dr. Nwora denies that this incident took place.

Plaintiff further testified that, in the fall of 2003, Dr. Nwora "got [her] against the wall" in the medical records department, put his hands on her breasts, down her pants and tried to kiss her on the mouth. *Mem. in Opp.* at 10-11. On another occasion, during the same time period, Plaintiff claims that Dr. Nwora came behind her and put his hands between her legs. Plaintiff

---

[3]Plaintiff claims that Defendant PMHS received a complaint from the patient's family regarding this incident.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

additionally contends that Dr. Nwora touched her breasts on several occasions. She noted one incident that took place in December 2003, but could not recall other incidents.[4] Plaintiff maintains that, at some unspecified time in 2003, she told Judy Boyd ("Ms. Boyd"), the House Supervisor, that Dr. Nwora was "sexually harassing [her]." Plaintiff claims that Defendant PMHS failed to take any action in response to her complaint.

On January 1, 2004, Dr. Nwora pushed a chair toward Plaintiff, (Plaintiff claims the chair hit her in the leg) while she was working in the emergency room. According to Plaintiff, Dr. Nwora then pointed his finger in her face and stated "[i]f you ever so much as touch me or lay a hand on me, I'll hurt you. Do you understand me?" *Pl.'s Dep. 45:14.* Plaintiff claims that she reported this incident to Murline Franks ("Ms.Franks"),the House Supervisor, and explained she (Plaintiff) believed that Dr. Nwora was retaliating against Plaintiff because she would not sleep with him.

Plaintiff further contends that Dr. Nwora made obscene and demeaning comments to her. Plaintiff claims that, on more than one occasion, Dr. Nwora told her that "he wanted to fuck [her.]" In addition, Plaintiff claims that Dr. Nwora invited Plaintiff to take trips with him, stating that he would make Plaintiff's life easier at work if she would have sex with him, and asked her how much money it would take. Plaintiff also contends that Dr. Nwora degraded and belittled her while she worked.

The parties dispute the point at which Plaintiff reported Dr. Nwora's alleged sexual harassment. Plaintiff claims that she and two other employees reported Dr. Nwora's aggressive

---

[4]Plaintiff asserts that Dr. Nwora touched her breasts and buttocks on more than five occasions. *Mem. in Opp.* at 10.

behavior, toward female employees who worked in the emergency room, to Ms. Farr and to

Ms.Boyd, at an unspecified time in 2003. According to Plaintiff, Ms. Farr explained that no

action could be taken unless the complaint against Dr. Nwora was filed in writing. As noted

earlier, Plaintiff claims that she also reported Dr. Nwora's alleged sexually explicit conduct to Ms.

Boyd, at an unspecified time in 2003.[5] Conversely, Defendant PMHS contends that it received no

notice of Plaintiff's complaint regarding Dr. Nwora's alleged sexually explicit conduct prior to

January 1, 2004.[6] Defendant PMHS asserts that Plaintiff's first complaint was filed after January

1, 2004. Defendant PMHS claims that, at that time, it investigated the allegations and was

unable to independently confirm or verify Plaintiff's contentions.

Plaintiff claims that the harassment forced her to request a change in her work schedule, as

she wanted to avoid working with Dr. Nwora.[7] According to Plaintiff, Ms. Farr denied her

request. Thereafter, Plaintiff states that she attempted to exchange her work schedule for another

employee's work schedule. The proposed arrangement was subsequently approved by Ms. Farr.

Plaintiff contends that her new schedule did not permit her to work as many hours as she had

worked under her previous schedule.[8] In her deposition, Plaintiff further testified that she

---

[5]In her deposition, Plaintiff testified that she did not recall the exact date she filed the complaint.

[6]Defendant contends that its Sexual Harassment Policy directs employees to process their complaints with the Director of Nursing, the Director of Human Resources or the Administrator. *See Noble Aff.* ¶ 5.

[7]Plaintiff did not indicate when she requested the transfer and the Court is unable to determine the date of the request from the record.

[8]Plaintiff claims that under the new schedule she was unable to work overtime and, therefore, she worked 15 to20 hours less in a two-week period than she worked previously.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

currently works the same number of hours that she worked under her original schedule.

In early March 2004, Plaintiff took a medical leave of absence from work. Plaintiff attributes her leave of absence from work to Dr. Nwora's alleged harassing conduct. Plaintiff claims that she did not return to work for approximately one month, as directed by her physician. Thereafter, Plaintiff worked as a nurse at a different hospital until the end of May 2004. She resumed working for Defendant PMHS in June 2004.

Defendant PMHS claims that it has a sexual harassment policy ("Policy"). The Policy apparently prohibits all sexual harassment [9] and directs employees to report incidents of sexual harassment to their "department head or to the personnel department." *Mem. in Supp. of Summ. J. 3*. The Policy indicates that upon receipt of a complaint a "full and prompt investigation" will be initiated. *Id.* Defendant PMHS claims that information regarding the Policy was disseminated to its employees, including Plaintiff. Plaintiff claims that she was aware of Defendant PMHS' policy against sexual harassment but did not read the terms of the policy until January 1, 2004, when she sought a copy of Defendant PMHS' Employee Handbook.

On May 17, 2005, Plaintiff filed a five count suit against Defendant PMHS, the County of Pemiscot ("Pemiscot County" or "County")[10] and Dr. Nwora. In Count I, Plaintiff alleges hostile environment sexual harassment against Defendants PMHS and Pemiscot County in violation of 42 U.S.C. §1983. In Count II, Plaintiff alleges hostile environment sexual harassment against

---

[9]Defendant claims that its Policy defines "sexual harassment" as unwelcome sexual advances and requests for sexual favors. *Mem. in Supp. of Summ. J. at 3.*

[10] Plaintiff alleges that Pemiscot County owns and operated the Pemiscot Memorial Health System and that the other named defendants are "the agents, servants and employees of the County."

5

Defendant PMHS pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) et seq., as amended by the Civil Rights Act of 1991, ("Title VII"). In Count III, Plaintiff filed a retaliation claim, under Title VII, against Defendants PMHS and Pemiscot County. In Count IV, Plaintiff alleges sexual harassment hostile work environment in violation of the Missouri Human Rights Act, Mo. Rev. Stat. §213.010 et seq., R.S.Mo. ("MHRA")[11]. In Count V, Plaintiff alleges assault and battery charges against Dr. Nwora, in his individual capacity. Plaintiff filed a time Charge of Discrimination with the Equal Employment Opportunities Commission (EEOC) and received her right-to-sue notice. Plaintiff also filed a timely charge of discrimination with the Missouri Human Rights Commission (MHRC) and received her right to sue notice.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact."

---

[11] Courts analyzing alleged violations of the MHRA follow the federal court's authority interpreting analogous Title VII claims. *See Gipson v. KAS Snacktime Co.*, 171 F.3d 574, 578 (8th Cir. 1999).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.

If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. "Thus, where the moving party can point to the absence of any evidence satisfying a necessary element of a claim, such as damages, and the non-moving party fails to produce any such evidence, summary judgment is properly entered." *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1018 (8th Cir. 2004).

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## III. DISCUSSION

### A. Motion to Strike

At the outset, before turning to the merits of the case, the Court addresses Plaintiff's motion to strike certain materials that Defendant PMHS failed to provide as part of its initial disclosures. Specifically, Plaintiff objects to Defendant PMHS' use of the Noble affidavit and the attached copy of a "sign-in sheet," which contains Plaintiff's signature, apparently verifying that Plaintiff attended an in-house seminar regarding sexual harassment in August 2003. *See Noble Aff.*, Ex. A-1. Plaintiff asserts that the Court's consideration of the evidence would be improper and prejudicial to Plaintiff because Defendant PMHS failed to provide the evidence during discovery, irrespective of Plaintiff's request for documentary evidence associated with any sexual harassment training that Defendant PMHS conducted. In addition, Plaintiff argues that the "sign-in sheet" is inadmissible hearsay because Defendant PMHS failed to provide an adequate foundation for submission of the evidence.

In response, Defendant PMHS argues that under the Federal Rules of Civil Procedure, "a party is under an on-going duty to seasonably amend and supplement responses to written discovery found to be incomplete or incorrect." *Def.'s Mem in Opp'n. to Pl.'s Mot. to Strike* 4. Thus, according to Defendant PMHS, "there is nothing improper or unfair in using a part of a

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

supplementation to a prior discovery request in connection with a pending motion for summary judgment." *Id.* Furthermore, Defendant PMHS argues that, the statements in and exhibits attached to Mr. Noble's affidavit comply with the Federal Rules because they are based on Mr. Noble's personal knowledge, as he had custody of and access to Defendant PMHS' records.

Federal Rule of Civil Procedure 56(e) provides that affidavits in support of or in opposition to summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to matters stated therein." Fed. R. Civ. P. 56(e); *See McSpadden v. Mullins*, 456 F.2d 428,430 (8th Cir. 1972) (noting the same). "Where an affidavit does not meet this standard, it is subject to a motion to strike." *Id*. at 430. Moreover, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

The Court finds that, as Administrator and Chief Executive Officer, it is reasonable to conclude that Mr. Noble had the requisite personal knowledge of the hospital's policy on conducting in-house seminars on sexual harassment. Therefore, the sign-in sheet is not inadmissible hearsay.

Federal Rule of Civil Procedure 26 mandates initial disclosure of relevant evidence in the case. *See* Fed. R. Civ. P. 26(a)(1)(B). The purpose of the rule is to avoid surprise and minimize prejudice. *Morefeld v. Kehm*, 803 F.2d 1452, 1455 (8th Cir. 1986). A party that fails to disclose information required by Rule 26(a), "shall not be permitted to use [the non-disclosed information] at a trial, at a hearing or on a motion, unless such failure is harmless" or there is "substantial justification" for the failure. Fed. R. Civ. 37(c)(1); *See also Porchia v. Design Equipment Co.*,

9

113 F.3d 877, 882 (8th Cir. 1997) (Harmlessness exists when there is no prejudice to the party entitled to disclosure and opposing admission of the evidence).

The Plaintiff has failed to explain how an earlier disclosure of the Noble affidavit "would have enabled her to avoid summary judgment." *Tenkku v. Normandy Bank*, 348 F.3d 737,743 (8th Cir. 2003). Furthermore, Plaintiff cannot claim unfair surprise because apparently, Plaintiff knew that she attended an in-house seminar on sexual harassment. Finally, Plaintiff had the opportunity to file a motion to compel disclosure for 13 months prior to the close of discovery and elected not to do so. Therefore, the Court may properly consider the Noble affidavit and attached exhibits and Plaintiff's motion to strike the Noble affidavit is denied.

**B.      Sexual Harassment Claim**

Title VII has been interpreted broadly to prohibit harassment in the workplace based upon race, color, religion, sex or national origin. *See Palesch v. Missouri Comm'n on Human Rights*, 233 F.3d 560, 566 (8th Cir. 2000); 42 U.S.C. § 2000e-2(a)(1). Sexual harassment in violation of Title VII exists when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), *cited in Palesch*, 233 F.3d at 566. "Hostile work environment harassment arises when 'sexual conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'" *Hall v. Gus Constr. Co., Inc.*, 842 F.2d 1010, 1013 (8th Cir. 1988) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (internal quotations omitted)). The harassment must be sufficiently severe or pervasive "to alter the conditions of employment and create an abusive working environment." *Meritor*, 477 U.S. at 67. "[S]imple teasing . . . offhand comments, and isolated incidents (unless

10

extremely serious) will not amount to discriminatory changes in the terms and conditions of employment . . . ." Likewise, "sporadic use of abusive language, gender-related jokes, and occasional teasing" are considered to be "the ordinary tribulations of the workplace," and therefore do not amount to actionable harassment. *Breeding v. Arthur J. Gallagher and Co.*, 164 F.3d 1151, 1158-59 (8th Cir. 1999) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)). *See also Cram v. Lamson & Sessions Co.*, 49 F.3d 466 (8th Cir. 1995) (comparing instances where conduct was "trivial" as opposed to "severe and pervasive"). To survive summary judgment under Title VII and the MHRA, Plaintiff must set forth specific evidence demonstrating that (1) she belongs to a protected group, (2) she was subject to unwelcome sexual harassment, (3) the harassment was based upon sex, (4) the harassment affected a term, condition, or privilege of employment, and (5) the defendant knew or should have known of the harassment and failed to take proper remedial action. *Clearwater v. Independent School Dist., No. 166*, 231 F.3d 1122, 1127 (8th Cir. 2000).

Defendant PMHS admits that as a woman, Plaintiff is a member of a protected class. Defendant PMHS also concedes that Mr. Nwora's alleged harassment was based on sex and unwelcomed by Plaintiff. Defendant PMHS argues, however, that the alleged harassment was not otherwise sufficient to meet the standard for hostile environment sexual harassment.

1. Plaintiff's Claim of Sexual Harassing Work Conditions

A plaintiff must demonstrate that the alleged conduct amounts to sexual harassment that affected a term, condition, or privilege of employment to satisfy the second and fourth elements of the prima facie case. Defendant PMHS argues that Dr. Nwora's harassment lacked the frequency and severity required to constitute an objectively hostile work environment.

In determining whether Plaintiff was subject to a hostile environment of sexual harassment, the Court must review the totality of Plaintiff's condition of employment while considering the following factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Faragher v. City of Boca Raton*, 118 S.Ct. 2275, 2283 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)). The alleged sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *Id.* While undertaking this analysis, the Court will remain aware that "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious)" are not sufficient to establish the existence of a hostile environment of sexual harassment. *Id.* (citing *Oncale v. Sundowner Offshore Services, Inc.*, 118 S.Ct. 998, 1003 (1998)). By doing so, the Court can "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Id.* at 2284.

Taking the facts of this case in the light most favorable to Plaintiff, the Court believes that Plaintiff has demonstrated the existence of an objectively and subjectively hostile work environment. Plaintiff testified that Dr. Nwora harassed her on several occasions over, at least, an eight month period. First, Plaintiff testified that Dr. Nwora made unwelcome sexual advances toward her. On one occasion, Dr. Nwora touched Plaintiff's buttocks in the presence of a patient. On a different occasion, Dr. Nwora put his hands on Plaintiff's breasts, down her pants and tried to kiss her on the mouth. In yet another incident, Dr. Nwora stood behind Plaintiff and put his hand between her legs. Dr. Nwora also touched Plaintiff's breasts on, at least, five other

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

occasions.

Second, Plaintiff asserts that Dr. Nwora frequently directed comments of a sexual nature toward her. He told Plaintiff, on more that one occasion, that he "wanted to fuck [her]." Dr. Nwora also invited Plaintiff to take trips with him, asked her to have sex with him in exchange for money, and stated that he would make Plaintiff's life easier at work, if she obliged. Third, Plaintiff claims that Dr. Nwora constantly degraded and belittled her and, other female employees in the emergency room, but did not treat male employees the same way.

Finally, Plaintiff alleges that Dr. Nwora physically and verbally threatened her. On one occasion, Dr. Nwora pushed a chair toward Plaintiff, which hit her in the leg, and threatened to hurt her if she ever touched him. *See Hall*, 842 F.2d at 1014 (holding that, in analyzing the plaintiff's sexual harassment claim, the district court correctly considered incidents of harassment or other unequal treatment that would not have occurred but for the fact that the plaintiffs were women, even if the conduct did not have explicit sexual overtones).

A review of other sexual harassment cases in this circuit reveals that Plaintiff's allegations are no less compelling than other cases supporting a finding of a hostile environment of sexual harassment. *See, e.g., Kopp v. Samaritan Health System*, 13 F.3d 264, 269 (8th Cir. 1994) (holding that doctor repeatedly swearing at female nurses and assistants, calling them abusive names and on occasion physically harming them created issue of material fact on sexual harassment claim); *Hathaway v. Runyon*, 132 F.3d 1214, 1217-18 (8th Cir. 1997) (finding a jury reasonably ruled for plaintiff when she was subject to two offensive touchings, followed by constant snickering and gutteral noises from two other employees); *Eich v. Bd. of Regents for Cent. Mo. State Univ.*, 350 F.3d 752, 755-56 (8th Cir. 2003) (finding conduct sufficiently severe

when plaintiff was touched in numerous suggestive ways and was subject to simulated sex acts).

Thus, the Court believes a genuine issue of material fact exists as to whether Dr. Nwora subjected

Plaintiff to a hostile work environment. *See Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840 (8th

Cir. 1998) (noting that where there is evidence of frequent, unwanted physical contact and sexual

innuendos, "the determination of whether the conduct rose to the level of abuse is largely in the

hands of the jury.").

Defendant PMHS states that the following Eight Circuit cases mandate that the Court

finds that Dr. Nwora's alleged harassing conduct was not sufficiently severe or pervasive. In

*Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958 (8th Cir. 1999), the appellant alleged that her co-

workers and supervisors stopped talking to her and treated her rudely, followed her around,

glared at her, slammed doors in her face and vandalized her car. *Id.* at 961. The district court

granted the employer's motion for summary judgment. The Eighth Circuit affirmed, finding that

the appellant engaged in behavior similar to that which she complained was unwelcome and

offensive. Further, the court held that although the plaintiff experienced unpleasant conduct and

rude comments, the conduct was not based on sex and did not alter the conditions of appellant's

work environment, as she was able to work full shifts and perform all of her duties.

Defendant PMHS' reliance on *Scusa* is misplaced, as that case is factually distinguishable.

First, unlike the appellant in *Scusa*, there is no evidence in the record to indicate that Plaintiff

engaged in conduct similar to the allegations underlying her sexual harassment claim.[12] Second,

---

[12] In addition, *Hocevar v. Purdue Frederick Co.*, 216 F.3d 745 (8th Cir. 2000), one of the
cases relied upon by Defendant, was abrogated in *Hocevar v. Purdue Frederick Co.*, 223 F.3d
721, 741 (8th Cir. 2000). Nevertheless, Plaintiff's case is also distinguishable from *Hocevar*. In
that case, Plaintiff participated in the use of profanity and improper jokes similar to that which she
complained of. "[Plaintiff's] claim truly struck the shoals when she admitted she used the sort of

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

as Defendant PMHS concedes, Dr. Nwora's alleged sexual harassment was based on sex. Third, the evidence in the record could lead a reasonable jury to conclude that Dr. Nwora's alleged actions altered Plaintiff's work environment. For instance, a reasonable jury could find that Dr. Nwora's behavior made it difficult for Plaintiff to perform her job duties, as she changed her work schedule and ultimately took a medical leave of absence. Thus, the Court declines to follow the court's ruling in *Scusa*.

Defendant PMHS also cites *Callanan v. Runyun*, 75 F.3d 1293 (8th Cir. 1996), for the proposition that Plaintiff failed to produce sufficient evidence to show that Dr. Nwora's behavior, the conduct at issue here, was severe or pervasive. Defendant PMHS' argument is unpersuasive. In *Callanan*, the appellant argued that her supervisors treated her differently from similarly situated male employees. She claimed that she received less favorable job assignments, was disciplined more often and more severely than her male counterparts and was referred to as a "bitch" by a co-worker. The court held that summary judgment in favor of appellant's employer was appropriate, on appellant's sexual harassment claim, because the conduct to which appellant was subjected was not "frequent, severe, physically threatening, or humiliating."

The Court believes that the conduct in this case was far more severe or pervasive than the conduct in *Callanan*. Plaintiff points to more than seven occasions, over an eight month period,

---

language she now complains of." *Hocevar*, 223 F.3d at 741 (Gibson, J., concurring). Further, the conduct complained of was aimed not at the Plaintiff, but at another individual, who was not Defendant's employee. *See id.* (citing *Hall*, 842 F.3d at 1015) ("[I]n the cases in our circuit where we have considered conduct directed at others in upholding sexual harassment claims, that conduct augmented evidence of harassment directed at the plaintiff"). Here, although Plaintiff claims that Dr. Nwora harassed other female employees, she contends that most of the offensive conduct was directed at her. Thus, *Hocevar* is not applicable to Defendant's motion for summary judgment on Plaintiff's hostile environment claim.

where Dr. Nwora subjected her to inappropriate, unwanted physical touching and sexually explicit comments. In addition, Plaintiff states that Dr. Nwora belittled and demeaned her and other female employees who worked in the emergency room. Plaintiff also testified that she was subjected to conduct that was physically threatening. As noted earlier, Dr. Nwora allegedly pushed a chair toward her, which hit her in the leg, and verbally threatened her. Furthermore, to the extent the record shows the dates of the incidents described, there was a clear pattern of offensive conversation and behavior, not merely an isolated incident or two. *See Hathaway*, 132 F.3d at 1221(noting that a single offensive utterance or exposure to distasteful conduct does not rise to the level of a Title VII violation).

Thus, considering the totality of the circumstances, the Court concludes that Plaintiff's allegations are sufficient to withstand Defendant PMHS' motion for summary judgment.

2. Plaintiff's Claim that Defendant PMHS Knew or Should Have Known About the Harassment, and Failed to Take Proper Remedial Action.

The relevant inquiry when considering whether the institutional employer is liable for an employee's harassment of a co-worker is whether the institutional employer knew or should have known of the harassment and failed to take prompt and effective corrective action. *Howard v. Burns Bros.*, 140 F.3d at 840. Defendant PMHS contends that it received no notice of Plaintiff's complaint of sexual harassment until early January 2004. Defendant PMHS further contends that Plaintiff attended an in-house seminar on sexual harassment in August, 2003 and was, therefore, aware of the policy regarding sexual harassment and the proper method of processing a complaint. However, Defendant PMHS argues Plaintiff failed to avail herself of the appropriate

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

methods for reporting Dr. Nwora's alleged harassment.

According to Defendant PMHS, prior to January 1, 2004, Plaintiff reported Dr. Nwora's conduct of a sexual nature only to the House Supervisor, Ms. Boyd, an individual not authorized to receive or process such complaints.[13] Defendant PMHS further states that Plaintiff's complaint to the Director of Nursing, Ms. Farr, prior to January 1, 2004, regarding Dr. Nwora's aggressive behavior toward female employees in the emergency room, does not constitute a "sexual harassment" complaint. *Def.'s Reply to Pl.'s Opp'n. to Def.'s Motion for Summ. J.* 6. Finally, Defendant PMHS asserts that when it received Plaintiff's first complaint of Dr. Nwora's sexual harassment, in early January 2004, it conducted an investigation, but was unable to confirm or verify Plaintiff's allegations.

In response, Plaintiff argues that she complained about the alleged harassment to Defendant PMHS' supervisors, on at least two occasions in 2003. Plaintiff states that she complained to Ms. Boyd and to Ms. Farr about Dr. Nwora's harassing conduct, at an unspecified time in 2003. In fact, according to Plaintiff, Ms. Farr advised Plaintiff, at that time, that no action could be taken unless Plaintiff filed her complaint in writing.[14] In addition, Plaintiff notes that, in March 2003, a patient's family member filed a complaint with Defendant PMHS regarding Dr. Nwora's inappropriate behavior towards Plaintiff. Thus, Plaintiff argues, these incidents put Defendant PMHS on notice, prior to January 1, 2004, of the verbal and physical harassment

---

[13]In his affidavit, Defendant's administrator, Mr. Noble, testified that employees of Defendant's Nursing Department were to report sexual harassment complaints to either the Director of Nursing, the Human Resource Director, or the Administrator. *Noble Aff.* ¶ 5.

[14]Plaintiff alleges that Defendant PMHS' sexual harassment policy does not indicate that employees must file a sexual harassment complaint in writing.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Plaintiff alleges.

The Court finds that a genuine issue of material fact remains on the issue of whether Defendant "knew or should have known" of the harassing acts allegedly taken against Plaintiff. Plaintiff contends that she complained of the harassment to Defendant in 2003 and that Defendant became aware of Dr. Nwora's harassing conduct when a patient's family member filed a complaint. Defendant's assertion that Plaintiff did not complain in 2003, indicates to the Court that a factual dispute exists as to the extent of Defendant's knowledge of harassment experienced by Plaintiff. In addition, the parties dispute the proper channels to which Plaintiff should have reported her allegations of harassment. Viewing the facts in the light most favorable to Plaintiff, the Court believes that a reasonable jury could conclude that Plaintiff's complaint to Ms. Farr[15] and to Ms. Boyd of at least some harassing episodes and Defendant's receipt of a patient's complaint of Dr. Nwora's inappropriate conduct was adequate to notify Defendant, in 2003, of the alleged harassment. Once the plaintiff makes a submissible case, the promptness and adequacy of the employer's response to a complaint of harassment are fact questions for the jury to resolve. *See Smith v. St. Louis Univ.*, 109 F.3d 1261, 1265 (8th Cir. 1997). Thus, the Court concludes that there is a genuine issue of material fact as to whether Defendant PMHS knew or should have known of the alleged harassing conduct. Accordingly, summary judgment on Plaintiff's sexual harassment claim under Title VII and the MHRA is denied.

---

[15] Defendant PMHS argues that Plaintiff's complaint to Ms. Farr, regarding Dr. Nwora's aggressive behavior towards women, does not constitute sexual harassment. The Court finds that this argument is without merit. As noted earlier, the cases in this circuit clearly indicate that acts which support a hostile environment sexual-harassment claim need not be explicitly sexual in nature. *See Hall*, 842 F.2d at 1010. *See also Kopp*, 13 F.3d at 269.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

**C.    Retaliation Claim Against Defendants PMHS and Pemiscot County**

Plaintiff argues that the change in her work schedule constituted retaliation because she was unable to work as many hours as she had previously.  In response, Defendant PMHS contends that it simply honored Plaintiff's request for a modification of her work schedule.

The elements of a prima facie case of retaliatory discrimination are: (1) the employee engaged in activity protected under Title VII; (2) an adverse employment action was taken against her; and (3) there was a causal connection between the two.  *See Evans v. Kansas City, Mo. Sch. Dist.,* 65 F.3d 98, 100 (8th Cir. 1995).  Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions, and then shifts back to the plaintiff to show that the defendant's reason was pretextual.  *Montandon v. Farmland Indus*., 116 F.3d 355, 359 (8th Cir. 1997); *Ruby v. Springfield R-12 Pub. Sch. Dist*., 76 F.3d 909, 911 (8th Cir. 1996).

The Court finds that the change in Plaintiff's work schedule does not rise to the level of an adverse employment action.  "A transfer constitutes an adverse employment action when the transfer results in a significant change in working conditions or in a diminution in the transferred employee's title, salary, or benefits." *Turner v. Gonzales*, 421 F.3d 688, 697 (8th Cir. 2005).  A transfer involving no reduction in pay and no more than a minor change in working conditions is insufficient to state a retaliation claim. *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (8th Cir. 1994).

Here, the undisputed facts show that management simply approved a schedule change that Plaintiff coordinated with another employee.  In addition, Plaintiff did not suffer any diminution in her title, salary or benefits as a result of the change.  In fact, Plaintiff testified that

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

she currently works the same number of hours that she worked under her original schedule. Thus, Plaintiff has not demonstrated how her temporary inability to work overtime hours, under a work schedule that she requested, caused her a "materially significant disadvantage." *See Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994). *See also Burlington Indus. v. Ellerth*, 524 U.S. 742, 761(1998) (noting that, to be legally cognizable, an adverse employment action must generally be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits).

Accordingly, the Court finds that summary judgment, in favor of Defendant PMHS, on Plaintiff's retaliation claim is granted.[16]

**D.      Section 1983 Claim**.

Under § 1983, local governmental entities may be sued for declaratory and injunctive relief, as well as for compensatory damages. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978). A government actor may be liable upon a showing of deprivation of a constitutional or federal right. 42 U.S.C. §1983. To establish a section 1983 cause of action, Plaintiff must establish that (1) she was deprived of a right "secured by the Constitution and laws" of the United States, and (2) the deprivation was caused by a person or persons acting under color of state law. *Ottman v. City of Indep., MO.*, 341 F.3d 751, 756 (8th Cir. 2003) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978)). Intentional sexual harassment by persons

---

[16] The Court also grants summary judgment in favor of Defendant Pemiscot County on Plaintiff's Title VII retaliation claim. Plaintiff has not presented evidence to show that Defendant PMHS retaliated against her. Thus, it is unnecessary for the Court to determine whether Defendant Pemiscot County was Plaintiff's employer, for purposes of Title VII.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

acting under state law violates the Equal Protection Clause of the Fourteenth Amendment and establishes a section 1983 action. *Moring v. Ark. Dep't of Corr.*, 243 F.3d 452, 455 (8th Cir. 2001).

The Court has determined that there is sufficient evidence for a reasonable jury to find that Plaintiff was subject to sexual harassment. *See Wright*, 417 F.3d at 884 (noting that sexual harassment claims under section 1983 are analyzed under the same standards developed in Title VII litigation). The question for this Court, then, is whether the conduct which Plaintiff alleges can be said to have taken place by persons acting under color of state law.

The traditional definition of acting under color of state law requires that "the defendant in a §1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (8th Cir. 1988). The Eight Circuit has noted that "[m]ere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law." *Ottman v. City of Independence*, 341 F. 3d 751, 762 (8th Cir. 2003) (quoting *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996)). The "dispositive issue is whether the defendant acted pursuant to power he or she possessed by state authority." *Id*. (quoting *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517,1523 (11th Cir. 1995). *See also Noland v. McAdoo*, 39 F.3d 269, 270 (10th Cir. 1994) ("In order to establish state action necessary to support a §1983 claim based on sexual harassment, a government official who allegedly harassed the employee must be that employee's supervisor or in some other way exercise state authority over the employee.").

Alternatively, local governments may be sued directly under § 1983 where the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation or

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690.

Local governments may also be sued for constitutional violations due to governmental "custom," even if such custom "has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91. A "custom or usage" is demonstrated by showing: (1) the existence of a "continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees"; (2) the governmental entity's deliberate indifference to or tacit authorization of misconduct after receiving notice thereof; and (3) that the custom was the moving force behind the constitutional violation. *Kula v. City of Minnetoka*, 365 F.3d 590, 604 (8th Cir. 2003). Importantly, while "[a] municipality is liable under § 1983 for unconstitutional acts by its officials or employees that implement or execute a municipal custom or policy, [it] may not be held vicariously liable for unconstitutional acts by employees." *Harris v. City of Pagedale*, 821 F.2d 499, 504 (8th Cir. 1987). *See also Monell*, 436 at 691 (employer does not have section 1983 liability for the constitutional torts of its employees under a theory of respondeat superior). In a § 1983 claim based on a municipality's failure to prevent misconduct by its employees, the municipality will only be held liable "where municipal officials can be shown to be directly responsible for the improper actions of their subordinates." *Id.* To this end, a plaintiff must demonstrate that city officials had notice of prior incidents of misconduct and deliberately failed to act on that information. *See id.*; *Andrews v. Fowler*, 98 F.3d 1069, 1075 (8th Cir. 1996). In other words, "[t]here must exist a prior pattern of unconstitutional conduct that is so persistent and widespread as to have the effect and force of law." *Andrews*, 98 F.3d at 1075 (internal quotation omitted).

Thus, Defendant can be held liable for Plaintiff's §1983 sexual harassment claim if Dr.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Nwora committed the alleged acts in his capacity as a supervisor or if the Defendant's corrective inaction constituted deliberate indifference toward Plaintiff's federally protected right.

The Court believes that the evidence in the record does not support a finding that Dr. Nwora was Plaintiff's supervisor. Plaintiff contends that Defendant was her supervisor because he directed her work responsibilities in the emergency room. To be considered a supervisor, an alleged harasser "must have had the power to take tangible employment actions against the victim, such as the authority to hire, fire, promote or reassign to significantly different duties." *Joens v. John Morell & Co.*, 354 F.3d 938, 940 (8th Cir. 2004). *See also Weyers v. Lear Operations Corp.*, (8th Cir. 2004). Although *Joens* and *Weyers* decided whether the alleged harasser was a supervisor under Title VII claims and the ADEA, respectively, the rationale underpinning those cases applies to the §1983 claim at issue here.

Dr. Nwora had the authority to direct employees in the emergency room, as to patient care. However, as Defendant points out, Dr. Nwora had no authority to affect, indirectly or directly the terms and conditions of Plaintiff's employment. He had no authority to hire, fire, promote or reassign Plaintiff to significantly different duties. *Joens*, 354 F. 3d at 940; *Weyers*, 359 F.3d at 1057 (although alleged harasser had the authority, as team leader, to assign plaintiff to particular tasks, he was not her supervisor because he could not reassign her to significantly different duties and did not have the authority to take tangible employment actions against plaintiff). Accordingly, the Court finds that Dr. Nwora did not hold a supervisory position in the emergency room, where the alleged harassing acts took place, for purposes of §1983.

The Court further concludes that the evidence presented does not establish a genuine issue of material fact as to whether Defendant was deliberately indifferent to Plaintiff's alleged sexual

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

harassment claim.  The undisputed facts establish that Defendant had policies in place to protect employees from sexual harassment.[17]  Further, although this Court has determined that there is a genuine issue of material fact as to whether the Defendant knew or should have known of Dr. Nwora's alleged sexual harassing conduct, knowledge is not sufficient.  The Defendant "must know about the conduct **and** facilitate it, approve it, condone it or turn a blind eye for fear of what [it] might see." *Ottman*, 341 F.3d at 760 (quoting *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994)) (emphasis added).  The record does not provide any evidence to satisfy this requirement.  Thus, Plaintiff cannot recover under her §1983 equal protection claim and summary judgment in favor of Defendant PMHS is granted.[18]

## D. Qualified Immunity

Qualified immunity generally shields state actors from civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity "is an immunity from suit rather than a mere defense to liability," which "is effectively lost if a case is erroneously permitted to go to trial."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  In resolving this qualified immunity dispute, two questions require answers.  The threshold question

---

[17] In her deposition, Plaintiff testified that she was aware of Defendant PMHS' sexual harassment policy outlined in the Employee Handbook. *Pl.'s Dep. at 113*.  In addition, Defendant provided evidence that it conducted an in-house seminar regarding sexual harassment. *Noble Aff*. ¶ 7.

[18] Because the Court has determined that Plaintiff has not established the elements of a §1983 sexual harassment claim with respect to Defendant PMHS, it is unnecessary to determine the extent to which Defendant Pemiscot County retained or exercised control over the operation of Defendant PMHS.  Therefore, the Court also grants summary judgment in favor of Defendant Pemiscot County on Plaintiff's §1983 sexual harassment claim.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

is whether the facts, viewed in the light most favorable to Plaintiff, show that Dr. Nwora's alleged conduct violated a federal constitutional or statutory right. *Saucier v. Katz*, 533 U.S. 194, 201(2001). Next, the Court asks whether the right was clearly established. The relative dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Wright v. Rolette County*, 417 F.3d 879, 884 (8th Cir. 2005) (citing *id.* at 202). This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 201.

The Court has determined that the facts alleged do not constitute a violation of Plaintiff's constitutional rights, under §1983. Hence, Plaintiff cannot satisfy the first prong of the qualified immunity analysis and the Court it is not required to address the question of whether the right was clearly established. *See Tuggle*, 348 F.3d at 723. Thus, Defendant PMHS is entitled to qualified immunity on Plaintiff's §1983 sexual harassment claim.

**E.      Plaintiff's Motion for Leave to File Amended Complaint.**

Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Absent good reason for denial, such as undue delay, dilatory motive, undue prejudice, or bad faith, a request for leave to amend should be granted. *Thompson-El v. Jones*, 876 F.2d 66, 67 (8th Cir. 1989).

The parties appeared by telephone conference on September 29, 2006 on Plaintiff's Motion for Leave to File an Amended Complaint [doc. #41], where the Court heard arguments of counsel, and was apprised of the recent opinion of *Cooper v. Albacore Holding, Inc.*, No. ED87027, 2006 Mo. App. LEXIS 5008 (Mo. App. August 29, 2006), which affects Plaintiff's

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

relief in this case, the Court finds that there is no good reason to deny Plaintiff's request to amend its Complaint. Thus, in the interests of justice, the Court will permit Plaintiff to amend its complaint. Accordingly, Plaintiff's Motion for Leave to file Amended Complaint [doc. #41] is granted. The trial setting of October 23, 2006 is vacated. The parties shall file, no later than October 10, 2006, a joint proposed scheduling plan for the Court's consideration.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Pemiscot Memorial Health Systems' Motion for Summary Judgment [doc. #27] is **GRANTED, in part** and **DENIED, in part**. Counts One and Three are dismissed, while Counts Two and Four remain.

**IT IS FURTHER ORDERED** that Defendant County of Pemiscot's Motion for Summary Judgment [doc. #25] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Joint Proposed Scheduling Plan by the parties shall be filed no later than **October 10, 2006**.

An appropriate Order of Judgment shall accompany this Order.

Dated this 3rd day of October, 2006.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

PDF created with FinePrint pdfFactory trial version [www.pdffactory.com](http://www.pdffactory.com)