UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MELANIE HENRY, </br>  </br> Plaintiff, </br>  </br> vs. </br>  </br> PEMISCOT MEMORIAL HEALTH </br> SYSTEMS, COUNTY OF PEMISCOT and </br> DR. JOHN NWORA, </br>  </br> Defendants. | ) </br> ) </br> ) </br> ) </br> ) </br> ) Case No. 1:05CV00075 ERW </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) |

## MEMORANDUM AND ORDER

This matter is before the Court upon Defendant Pemiscot Memorial Health Systems' Second Motion for Summary Judgment [doc. #53] and Defendant John Nwora's Motion for Summary Judgment [doc. #56].

**I.     BACKGROUND FACTS**

Defendant Pemiscot Memorial Health Systems ("Defendant PMHS" or "PMHS") is a hospital organized under § 205.160, *et seq.*, R.S. Mo. (2007), and owned by the County of Pemiscot, State of Missouri. Plaintiff, Melanie A. Henry ("Plaintiff") was employed by PMHS as a nurse from April 1993 to an unspecified date. Defendant John Nwora, M.D. ("Dr. Nwora" or "Defendant Nwora") was employed by Defendant PMHS, as both an emergency room physician and Medical Director of the Primary Care Clinic, from July 1994 to February 2005. Plaintiff asserts that over a nine month period, while she worked in Defendant PMHS' emergency room department, Dr. Nwora subjected Plaintiff to offensive and unwelcome physical touching.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Plaintiff also asserts that Dr. Nwora frequently directed comments of a sexual nature toward her. Finally, Plaintiff claims that Dr. Nwora physically and verbally threatened her. On one occasion, on January 1, 2004, Dr. Nwora pushed a chair toward Plaintiff, (Plaintiff claims the chair hit her in the leg) while she was working in the emergency room.

On May 17, 2005, Plaintiff filed a five-count Complaint against Defendant PMHS, the County of Pemiscot ("Pemiscot County" or "County")[1] and Dr. Nwora. In Count I, Plaintiff alleges hostile environment sexual harassment against Defendants PMHS and Pemiscot County in violation of 42 U.S.C. §1983. In Count II, Plaintiff alleges hostile environment sexual harassment against Defendant PMHS pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et seq*., as amended by the Civil Rights Act of 1991, ("Title VII"). In Count III, Plaintiff filed a retaliation claim, under Title VII, against Defendants PMHS and Pemiscot County. In Count IV, Plaintiff alleges sexual harassment hostile work environment in violation of the Missouri Human Rights Act, Mo. Rev. Stat. §213.010 et seq., R.S.Mo. ("MHRA")[2]. In Count V, Plaintiff alleges assault and battery charges against Dr. Nwora, in his individual capacity. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunities Commission (EEOC) and received her right-to-sue notice. Plaintiff also filed a timely charge of discrimination with the Missouri Human Rights Commission (MHRC) and received her right to sue notice. On

---

[1] Plaintiff alleges that Pemiscot County owns and operated the Pemiscot Memorial Health System and that the other named defendants are "the agents, servants and employees of the County."

[2] Courts analyzing alleged violations of the MHRA follow the federal court's authority interpreting analogous Title VII claims. *See Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 845 (8th Cir. 2006) ("We analyze Nitsche's claims under both Title VII and the MHRA in the same manner.").

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

October 3, 2006, this Court granted Defendant Pemiscot Memorial Health Systems' Motion for Summary Judgment on Counts I and III of Plaintiff's Complaint.[3] Counts II and IV against Defendant PMHS and Count V against Defendant Nwora remain.

The Court's October 3, 2006 Order also granted Plaintiff's Motion for Leave to file an Amended Complaint. Plaintiff's First Amended Complaint, filed on October 11, 2006, sets forth an additional claim against Defendant PMHS and two additional claims against Defendant Nwora, in his individual capacity. In Count IV, Plaintiff alleges a claim against Dr. Nwora for sexual harassment and discrimination, in violation of the MHRA. Count VI, against both Defendant PMHS and Defendant Nwora, alleges that Defendant Nwora negligently pushed a chair toward her, which struck her in the leg. Plaintiff also contends that Defendant PMHS is liable for injuries Plaintiff suffered as a result of Defendant Nwora's negligent acts.

## II. DISCUSSION

### A. Count IV against Defendant Nwora

Count IV against Defendant Nwora, in his individual capacity, is a claim for sexual harassment and discrimination, in violation of the MHRA, § 213.010 *et seq*. Defendant Nwora argues that he is entitled to summary judgment on Plaintiff's claim because during his employment at PMHS, he was not Plaintiff's supervisor, and thus not an "employer," within the meaning of the MHRA. Plaintiff counters that Defendant Nwora was an employer, as defined by the MHRA, because "he was acting in the interest" of PMHS, in his capacity as a physician in PMHS' emergency room and as medical director of PMHS' Primary Care Clinic.

---

[3] This Court also granted Defendant County of Pemiscot's Motion for Summary Judgment on Counts I, II, III and IV of Plaintiff's Complaint.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Under the MHRA, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." Mo. Rev. Stat. § 213.055.1(1)(a). An employer is defined as, among other things, "any person directly acting in the interest of an employer." Mo. Rev. Stat. § 213.010 (7). The Court declines Plaintiff's invitation to construe the MHRA's definition of employer to encompass individuals who are not supervisory employees.

In *Cooper v. Alacore Holdings, Inc.*, 204 S.W.3d 238 (Mo. App. 2006), the plaintiff, a member of the employer's senior business team who reported directly to the chief executive officer ("CEO"), filed suit against the CEO, in his individual capacity, for sexual harassment, in violation of the MHRA. The Missouri Court of Appeals held that if an individual meets the definition of employer as defined by the MHRA, then that person should be subject to liability in his individual capacity. *Id*. at 244. The court concluded that the defendant, as CEO of the employer, falls within the definition of employer under the MHRA and may be found individually liable for sexual harassment. *Id*. at 244.

In reaching its conclusion, the *Cooper* court examined various interpretations of the definition of employer in statutes with language analogous to that of the MHRA. For example, the court compared the MHRA definition of employer with the same definition found in the Family Medical Leave Act ("FMLA"). The court noted that the Eighth Circuit Court of Appeals in *Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002), imposed liability on individual supervisors because, like the MHRA, the FMLA's definition of employer included "'any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer.'" *Id*. (quoting 29 U.S.C. § 2611(4)(A)(ii)(I)). Federal district courts have likewise determined that

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

the FMLA permits individual liability for supervisors who control the terms and conditions of employment. *See Freemon v. Foley*, 911 F. Supp. 326, 331 (N.D. Ill. 1991) (permitting individual liability for supervisor who "exercised sufficient control over plaintiff's ability to take protected leave"); *Bryant v. Delbar Prods., Inc.*, 18 F. Supp. 2d 799, 808 (M.D. Tenn. 1998) (noting that majority of courts have determined that the FMLA extends individual liability to those who control a plantiff's ability to take a leave of absence); *Johnson v. A.P. Prods., Ltd.*, 934 F. Supp. 625, 629 (S.D.N.Y. 1996) (same).[4]

The *Cooper* court also cited with approval *Genaro v. Central Transport, Inc.*, 703 N.E.2d 782, 787-78 (Ohio 1999), noting that the definition of employer at issue in *Genaro* is nearly identical to the definition of employer within the MHRA. In that case, the Ohio Supreme Court held that the clear and unambiguous language of Ohio's unlawful discrimination statute, Ohio Rev. Code 4112.02(A), imposes individual liability on mangers and supervisors for their discriminatory conduct. *Id.* at 785.

Given the parallel between the MHRA and Ohio's unlawful discrimination statute, decisions interpreting Ohio's statute offer further guidance for construing the term "employer" as it is used in the MHRA. Ohio courts have held that non-supervisory employees should be precluded from individual liability for discrimination claims under § 4112.02. In *Samadder v. DMF of Ohio, Inc.*, 154 Ohio App. 3d 770, 779 (Ohio Ct. App. 2003), the Ohio Court of Appeals

---

[4] The Fair Labor Standards Act (FLSA) also defines employer in a manner similar to that of the FMLA and the MHRA: "Employer includes any person acting directly or indirectly in the interest of an employer in relation to an employee...." 29 U.S.C.A. § 203(b). In interpreting the definition of "employer" within the meaning of the FLSA, the Eighth Circuit Court of Appeals held in *Wirtz v. Pure Ice Co.*, 322 F.2d 259, 263 (8th Cir. 1963), that an employer is an individual in management who controls the hiring and firing of employees.

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

held that "for purposes of R.C. Chapter 4112, supervisors and managers may be held jointly and/or severally liable with their employer for their discriminatory conduct." Accordingly, the court determined that the trial court properly dismissed the appellant's discrimination claim, under § 4112.02, against non-supervisory employees, in their individual capacity. *Id*. Similarly, the court in *Hoon v. Superior Tool Co.*, No. 79821, 2002 Ohio App. LEXIS 183, at *13 (Ohio Ct. App. January 24, 2002) held that § 4112.02 does not extend individual liability beyond supervisors and managers, to any employee.

Finally, the Court's review of case law from Missouri state and federal courts reveals that courts have held only supervisors or managers individually liable for violations of the MHRA. *See e.g., Brady v. Curators of the Univ of Mo.*, 213 S.W.3d 101, 113 (Mo. App. 2006) (finding that the plaintiff's supervisors "fall within the definition of 'employer' under the MHRA" and therefore may be held individual liable for discrimination and retaliation under the MHRA); *see also Gronefeld v. City of Normandy*, No. 4:06CV386 DDN, 2007 U.S. Dist. LEXIS 35474, at *29 (E.D. Mo. May 15, 2007) (finding supervisor may be held individually liable, under the MHRA, for subjecting employee to a hostile work environment, disparate treatment and retaliation).

After considering the opinions interpreting the FMLA and Ohio's anti-discrimination statute, the language of the MHRA[5] and state and federal court decisions interpreting the MHRA, the Court is persuaded that Dr. Nwora must have held a supervisory position, in the PMHS

---

[5] The Court observes that the language contained in the provisions of the MHRA, supports the conclusion that an individual must hold a supervisory position to be sued in his individual capacity. The Court pays particular attention to the phrase "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment ...," § 213.055.1(1)(a), which suggests that Congress intended "employer" to encompass those individuals authorized to control the wages, terms and conditions, and privileges of employment.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

emergency room, to be sued under the MHRA in his individual capacity. In its October 3, 2006 Order, this Court held the evidence in the record does not support a finding that Dr. Nwora held a supervisory position in the PMHS emergency room. This Court noted that while Dr. Nwora may have directed Plaintiff as to patient care, he had no authority to affect, indirectly or directly the terms and conditions of her employment. He had no authority to hire, fire, promote or reassign Plaintiff to significantly different duties. In addition, he had no authority to reduce Plaintiff's salary or control her work hours. Accordingly, the Court finds that because Dr. Nwora did not act as Plaintiff's supervisor, summary judgment is appropriate on Plaintiff's discrimination claim against him, under the MHRA.

    C.    <u>Count VI against Defendant Nwora</u>

Count VI is a state law negligence claim against Defendant Nwora, in his individual capacity. Plaintiff claims on January 1, 2004, Dr. Nwora pushed a chair toward her, (Plaintiff claims the chair hit her in the leg) while she was working in the emergency room. In her Amended Complaint, Plaintiff alleges that as a result of this incident, Defendant Nwora was careless and negligent (1) in failing to look for other people in the vicinity and direction in which he pushed the chair; (2) in failing to bring the chair that he had pushed to a stop before it collided with Plaintiff; (3) in pushing the chair with excessive force; (4) in pushing the chair in Plaintiff's direction and (5) in pushing the chair with such force and speed which made it impossible for Plaintiff to stop the chair or avoid the chair before it struck her.

In their papers, the parties claim that, with respect to Count IV against Dr. Nwora, the question before the Court is whether, he is immune from liability, under the Workers'

7

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Compensation Law, for his alleged negligent actions.[6] However, it is not necessary for the Court to resolve that issue because Plaintiff alleges in her Complaint, and in her papers, that Dr. Nwora's alleged act of pushing the chair toward her was intentional.[7] It is elementary that, under Missouri law, allegations of fact constituting a cause of action for an intentional tort cannot also support a claim for negligence. *McLaughlin v. Marlatt*, 246 S.W.548, 553 (Mo. 1922); *see also Martin v. Yeoham*, 419 S.W.2d 937, 945 (Mo. App. 1967) ("An act cannot be both careless and willful."); *Armoneit v. Ezell*, 59 S.W.3d 628, 633 (Mo. App. 2001) ("proof of a willful act resulting in bodily harm ... will not justify or support jury submission of the case on a hypothesis

---

[6] The Workers Compensation Law provides for the exclusive rights and remedies of injured workers. Mo. Rev. Stat. Ann. § 287.120 (2007). An employer's immunity under the § 287.120, from common law liability for failure to provide a safe working environment extends to the employer's employee. *Grob v. Kohler*, 148 S.W.3d 11, 14 (Mo. App. 2004). "The injured party's fellow employee loses this immunity, however, if he or she affirmatively commits negligent acts outside the scope of an employer's responsibility to provide a safe workplace." *Id*. (citing *Hedglin v. Stahl Specialty Co.*, 903 S.W.2d 922, 926 (Mo. App. 1995)). "For a petition to state a cause of action against a fellow employee, it must charge 'something extra' beyond a breach of general supervision and safety." *Grob*, 148 S.W.3d at 14 (citing *Craft v. Scaman*, 715 S.W.2d 531, 536-37 (Mo. App. 1986). "A co-employee loses [Workers' Compensation Law] immunity only if he affirmatively causes or increases his fellow employee's risk of injury." *Grob*, 148 S.W.3d at 14 (quoting *Lyon v. McLaughlin*, 960 S.W.2d 522, 526 (Mo. App. 1998).
    Plaintiff contends that Dr. Nwora's affirmative act of pushing the chair toward Plaintiff, increased the risk of injury to her and therefore is sufficient to avoid summary judgment. Defendant Nwora, on the other hand, maintains that the careless act of pushing a chair is not "something extra" beyond a breach of duty to maintain a safe working environment and is, therefore, not an affirmative negligent act.

[7] In Count V of Plaintiff's Amended Complaint, she alleges the intentional torts of assault and battery against Dr. Nwora. In support of her assault and battery claims, Plaintiff alleges that "On or about January 1, 2004, NWORA struck plaintiff with a chair." Pl.'s Compl., ¶ 66. Plaintiff further alleges that she is entitled to punitive damages because Defendant Nwora's conduct in, among other things, "striking plaintiff with a chair ... was intentional, willful, wanton...." *Id*. at ¶ 69. Additionally, in her response to Defendant Nwora's Motion for Summary Judgment, Plaintiff notes that the chief executive officer of PMHS, Mr. Kerry Noble ("Mr. Noble"), testified in his deposition that Defendant Nwora admitted that he became angry and intentionally pushed the chair toward Plaintiff. Noble Dep. at 69.

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

that the injury for which recovery is sought was the result of an act of negligence"). Accordingly, summary judgment must be granted in favor of Defendant Nwora on Plaintiff's negligence claim because the facts alleged in that claim also serve as the basis for her assault and battery claims.

A.      Count VI Against Defendant PMHS

In light of the Court's ruling that summary judgment is appropriate on Plaintiff's negligence claim against Defendant Nwora, her claim against Defendant PMHS, based on Defendant Nwora's alleged negligent acts, must also fail. Contrary to Plaintiff's argument, Defendant PMHS has not waived its sovereign immunity from tort liability. PMHS is a county hospital and does not maintain or carry liability insurance providing it with coverage for negligent or intentionally tortious acts of PMHS employees or for tort claims asserted against PMHS based upon such negligent or intentionally tortious acts.

In Missouri, public entities, including county hospitals, are entitled to sovereign immunity from tort liability, unless a certain prescribed exception applies. *See* Mo. Rev. Stat. § 537.600 (2007) ("sovereign or governmental tort immunity ... shall remain in full force and effect."); *see also Gavan v. Madison Memorial Hospital*, 700 S.W.2d 124, 127 (Mo. App. 1985) ("the application of the doctrine of governmental immunity to a suit against a county hospital is not an open question"); *Stacy v. Truman Medical Center*, 836 S.W.2d 911, 918 (Mo. 1992) ("The application of sovereign immunity to a county hospital organized pursuant to section 205.160 is well settled.").

Here, the parties do not appear to dispute that PMHS is a county hospital, organized pursuant to § 205.160, and that this lawsuit does not fall within the exceptions to sovereign immunity recognized in § 537.600, for the operation of motor vehicles or property defects.

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Rather, Plaintiff argues that Defendant PMHS has failed to provide the Court with evidence that it has not waived its sovereign immunity, under § 537.610 R.S. Mo.,[8] by not purchasing liability insurance for its employees for "tort claims," either at the time of the incident alleged in Plaintiff's complaint or at the time coverage may have been afforded to Defendant PMHS for Dr. Nwora's alleged negligent acts.

In *State ex rel. Cass Medical Center v. Mason*, 796 S.W.2d 621, 623 (Mo. 1990) the Supreme Court of Missouri held that a county hospital did not waive sovereign immunity under § 537.610.1, because the liability insurance the hospital purchased did not cover the plaintiff's negligence claim. In this case, Defendant PMHS has offered the affidavit of Mr. Noble to support its claim that it has not waived its sovereign immunity. Mr. Noble states that as of January 1, 2004, Defendant PMHS did not carry liability insurance providing coverage for negligent or intentionally tortious acts of PMHS employees or for tort claims asserted against PMHS based upon such negligent or intentionally tortious acts. *See* Noble Supplemental Affidavit ¶ 4. The Court finds Mr. Noble's testimony provides sufficient evidence to establish that Defendant PMHS did not purchase liability insurance, at the time of the alleged incident, to cover any tortious acts by its employees. The Court therefore concludes that Defendant PMHS has not waived its sovereign immunity from tort liability, under § 537.610.1.

---

[8] § 537.610.1, in pertinent part, provides: "the governing body of each political subdivision of this state, notwithstanding any other provision of law, may purchase liability insurance for tort claims, made against the state or the political subdivision,.... Sovereign immunity for the state of Missouri and its political subdivisions is waived only to the maximum amount of and only for the purposes covered by such policy of insurance purchased pursuant to the provisions of this section and in such amount and for such purposes in any self-insurance plan duly adopted by the governing body of any political subdivision of the state."

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Pemiscot Memorial Health Systems' Second Motion for Summary Judgment [doc. #53] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant John Nwora's Motion for Summary Judgment [doc. #56] is **GRANTED**.

An appropriate Order of Judgment shall accompany this Order.

Dated this 25th day of June, 2007.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

11

PDF created with FinePrint pdfFactory trial version www.pdffactory.com